United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA,

    Plaintiff,

    v.

DOCTORS MEDICAL CENTER OF MODESTO, INC., *et al.*,

    Defendants.
_____/

No. C-07-1740 EMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**(Docket Nos. 5, 12)**

    The Laborers Health and Welfare Trust Fund for Northern California ("Trust Fund") is an employee welfare benefit plan that was created by a written trust agreement subject to and pursuant to ERISA. Defendant Doctors Medical Center of Modesto, Inc. ("DMC") is a medical services provider, incorporated in California and with facilities in Modesto, California. This lawsuit arose from a disagreement regarding payment for medical services that DMC provided to a participant in the Trust Fund's benefit plan in February 2005. DMC demanded arbitration of its claim against the Trust Fund. Plaintiff, acting on behalf of the Trust Fund, then sued DMC and the American Arbitration Association, seeking declaratory and injunctive relief from DMC's attempt to compel arbitration of this dispute.

    Pending before the Court are DMC's motion to dismiss and, in the alternative, for summary judgment, and Plaintiff's motion for summary judgment. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS**

DMC's motion to dismiss for lack of subject matter jurisdiction and **DENIES** the Trust Fund's motion for summary judgment.

## I.   FACTUAL & PROCEDURAL BACKGROUND

As noted above, the Trust Fund is an employee welfare benefit plan that was created by a written trust agreement subject to and pursuant to ERISA. The Trust Fund provides health care benefits to its participants in accordance with a plan document ("Plan"). *See* Compl. ¶ 4, Ex. A. Only the participants and the Trust Fund are direct parties to the Plan.

DMC is a medical services provider. Effective February 1, 2005, DMC entered into a Comprehensive Contracting Hospital Agreement ("CCHA") with Blue Cross of California ("Blue Cross"). *See* Def.'s Mot., Ex. A (CCHA). Under the contract, Blue Cross and DMC agreed that DMC would bill Blue Cross, as well as "Other Payors," at a discounted rate for medical services provided to their members. *See id.* (CCHA ¶¶ 1.4, 2.2). An Other Payor is an entity, such as the Trust Fund, that utilizes Blue Cross's Managed Care Network pursuant to an agreement with Blue Cross. *See id.* (CCHA ¶ 2.25). In return for the discounted rates, Blue Cross agreed to encourage members to choose DMC to be their medical services provider. *See id.* (CCHA ¶ 11.1).

On July 1, 1996, before DMC entered into the CCHA with Blue Cross, the Trust Fund entered into an Administrative Services Agreement ("ASA") with Blue Cross.[1] This agreement contains a Prudent Buyer Plan Amendment that allows the Trust Fund to pay a discounted rate for medical services that its participants receive from Blue Cross preferred providers. *See* Supp. Smith Decl., Ex. A (Prudent Buyer Plan Amendment ¶¶ 1.1, 1.2).[2] Blue Cross preferred providers are

---

[1] Technically, the ASA is a contract between the Basic Crafts Health Care Consumer Coalition, Inc. ("Basic Crafts") and BC Life & Health Insurance. *See* Supp. Smith Decl. ¶ 3. However, the Trust Fund is a member of Basic Crafts, and Blue Cross is an affiliate of BC Life & Health Insurance. *See id.* ¶¶ 3-4. Moreover, both the Trust Fund and DMC have represented that the ASA is an agreement between the Trust Fund and Blue Cross. *See* Pl.'s Mot. at 2; Def.'s Mot. at 1. For the purposes of this Order, therefore, the Court will refer to the ASA, including the Prudent Buyer Plan Amendment, as an agreement between the Trust Fund and Blue Cross.

[2] The record contains three declaration from Mr. Smith: a declaration in opposition to the Defendant's motion to dismiss, a declaration in support of Plaintiff's motion for summary judgment, and a supplemental declaration submitted after the hearing. The first two declarations are very similar in content. For the purposes of this Order, the Court will refer to the declaration in opposition to the motion to dismiss as "Smith Decl." and the supplemental declaration as "Supp. Smith Decl." The Court does not cite to the declaration in support of the Plaintiff's motion for summary judgement.

1 those providers which, like DMC, have entered into an agreement such as the CCHA[3] with Blue
2 Cross. *See* Def.'s Mot. at 1; Pl.'s Mot. at 2-3. Only the Trust Fund and Blue Cross are signatories to
3 the ASA.
4 　　　　The ASA does not expressly incorporate the terms of the CCHA or mention the CCHA by
5 name. DMC, however, points to several paragraphs of the ASA that it contends incorporate by
6 reference the terms of the CCHA. *See* Def.'s Supp. Letter at 5 n.2. Those paragraphs state that:

(1) the Trust Fund "has expressed the desire to enjoy" the benefits of Blue Cross's prudent buyer plan arrangements, *see* Supp. Smith Decl., Ex. A (Prudent Buyer Plan Amendment ¶ 1.1);

(2) the Trust Fund agreed to implement and administer the Plan in a way that would satisfy Blue Cross's obligations to preferred providers such as DMC, *see id.* (Prudent Buyer Plan Amendment ¶ 1.2;

(3) the Plan must be constituted to be compatible with Blue Cross's obligations to preferred providers, *see id.* (Prudent Buyer Plan Amendment ¶ 4.1);

(4) adjudication of claims for benefits will be conducted in accordance with the terms of Plan, the agreement between Blue Cross and the provider, and Blue Cross's own policies, *see id.* (Amendment to the ASA ¶ 3.3.); and

(5) the Trust Fund is only entitled to the discounts specifically set forth in the ASA, *see id.* (Amendment 4 to the ASA ¶ 1.5).

However, neither the actual text or any summary of the terms of the CCHA is contained in the ASA.

　　　　The parties do not dispute that, from February 15, 2005, through February 22, 2005, a Trust Fund participant stayed in DMC's hospital and received medical services from DMC. *See* Compl. ¶ 8; Def.'s Mot. at 2; *see also* Compl., Ex. B (DMC's arbitration demand letter). It is further undisputed that DMC submitted a bill for these services to the Trust Fund and that the Trust Fund paid DMC for the services, but paid less than DMC claims it is owed. *See* Compl. ¶ 9; Def.'s Mot. at 2. The Trust Fund has submitted a document titled "Explanation of Benefits," which indicates

---

[3] In both its briefs and in its agreement with Blue Cross, the Trust Fund refers to agreements, like the CCHA, between Blue Cross and hospitals as prudent buyer plan arrangements. *See* Pl.'s Mot. at 2-3; Supp. Smith Decl., Ex. A.

that it paid DMC $84,168 for the care given to the participant. *See* Supp. Smith Decl., Ex. C (explanation of benefits). According to Trust Fund, it did not pay the entire amount billed because, under the terms of the Plan, some of the services (in particular the last day of hospital stay) were not medically necessary. *See* Compl. ¶¶ 9-10. The Plan only covers medical services that are certified as medically necessary by a Professional Review Organization. *See* Compl., Ex. A at 84-86 (Plan Art. V., §1). DMC disputes this denial of benefits. DMC characterizes the dispute as one concerning the rate of payment negotiated in the contracts each party has with Blue Cross, not a denial of benefits owed the participant. *See* Def.'s Mot. at 2.

On January 15, 2007, DMC initiated arbitration to resolve the dispute between itself and the Trust Fund pursuant to the CCHA. *See* Compl. ¶¶ 11, 17 & Ex. B. In its arbitration demand letter, DMC asserted a claim that sounds in state contract law. *See id.*, Ex. B (characterizing the dispute as concerning the Trust Fund's "[f]ailure to reimburse hospital pursuant to contract rates for services provided to the patient"). Subsequently, the Trust Fund initiated the instant suit, seeking declaratory and injunctive relief from DMC's attempt to compel arbitration. In response, DMC filed a motion to dismiss for lack of subject matter jurisdiction, improper venue, and failure to state a claim for relief. *See* Def.'s Mot. at 1-2. Subsequently, the Trust Fund moved for summary judgment. *See* Pl.'s Mot. at 1.

The Trust Fund argues, in effect, that it cannot be compelled to arbitrate under the CCHA because is it not a party to the CCHA (a contract between Blue Cross and DMC). *See* Compl. ¶ 12. DMC contends, on the other hand, that the Trust Fund is a party to the CCHA through incorporation by reference, agency, or equitable estoppel. *See* Def.'s Supp. Letter at 4, 6,7. The parties dispute whether this Court has subject matter jurisdiction over the case.

## II. DISCUSSION

A.  Subject Matter Jurisdiction

The preliminary question that the Court must address is whether subject matter jurisdiction exists. This turns on whether the dispute between the Trust Fund and DMC falls within the purview of and is preempted by ERISA. As the party seeking to invoke federal jurisdiction, the Trust Fund "has the burden of establishing that jurisdiction exists." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,

557 F.2d 1280, 1285 (9th Cir. 1977). Under the "well-pleaded complaint" rule, federal subject matter jurisdiction must appear on the face of the claim, and not be in anticipation of future defenses that might be raised. *See Aetna Health, Inc. v. Davila*, 542 U.S. 200, 206 (2004). Even if the complaint does not explicitly raise a federal question and only raises state law claims, jurisdiction is appropriate "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S., 1, 8 (2003). ERISA is one such statute that can completely preempt state-law causes of action. *See Aetna Health*, 542 U.S. at 206.

A Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter can be either facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). If a court is considering whether a complaint makes a facial claim of jurisdiction, it must accept all allegations of fact in the complaint as true. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001)); *Democratic Nat'l Comm. v. Watada*, 199 F. Supp. 2d 1018, 1026-27 (D. Hawaii 2002). A facial motion to dismiss is converted to a factual one if the moving party presents to the court affidavits or other admissible evidence regarding jurisdiction. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003). When determining jurisdiction in fact, a court may consider evidence outside the pleadings, such as matters of public record and evidence properly introduced before the court, and need not assume that all allegations in the complaint are true. *See id.*; *White*, 227 F.3d at 1242. Because DMC, the moving party, has submitted a declaration and the CCHA as evidence relevant to jurisdiction, the Court is faced with a factual motion to dismiss and will consider evidence outside of the pleadings in order to determine whether subject matter jurisdiction exists.

B.  ERISA Preemption

The instant lawsuit was brought in response to DMC's assertion of its monetary claim against the Trust Fund through its demand for arbitration. As noted above, DMC's asserted claim in arbitration sounds in state, not federal law. In this suit, the Trust Fund seeks to enjoin the arbitration as inconsistent with and preempted by ERISA. Although this case was not removed from a state court -- as DMC did not file a suit against the Trust Fund in state court but instead invoked

arbitration -- this suit is analogous to removal.  In this suit, the Trust Fund relies on ERISA as a basis for federal jurisdiction in seeking to move the adjudication from the arbitration into the federal court.  Accordingly, subject matter jurisdiction in this Court turns on the question of whether ERISA completely preempts the dispute between the Trust Fund and DMC such that removal would have been proper.  *See Blue Cross of California v. Anesthesia Case Associates Medical Group, Inc.*, 187 F.3d 1045, 1050 (9th Cir. 1999).  Both parties have so analyzed this case.

The Ninth Circuit has identified "two strands to ERISA's powerful preemptive force." *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005).

> First, ERISA section 514(a) expressly preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan[,]" 29 U.S.C. § 1144(a). . . .
>
> Second, ERISA section 502(a) contains a comprehensive scheme of civil remedies to enforce ERISA's provisions.  *See* 29 U.S.C. § 1132(a).  A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a).

*Id.* Section 502(a)(1)(B) provides that a civil action under ERISA may be brought "by a participant or beneficiary . . . to recover benefits due him under his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Section 514(b) provides that with specific exceptions, ERISA "shall supercede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a).  There is a difference between complete preemption under § 502(a) which sustains removal jurisdiction and more narrow conflict preemption under § 514(a) which does not.  *See Toumajian v. Frailey*, 135 F.3d 648, 654-55 (9th Cir. 1998).

In the case at bar, the Trust Fund -- recognizing that its case is analogous to removal -- asserts federal jurisdiction based on complete ERISA preemption under § 502(a)(1)(B)[4] only.  In its

---

[4] Absent complete preemption under § 502(a)(1)(B), it is not clear whether DMC would have standing to bring this suit under § 502(a).  The Trust Fund is not *per se* a "fiduciary" under, *e.g.*, § 502(a)(3) absent a demonstration that it exercises discretionary authority over the management or administration of the Plan as an entity distinct from the Trust Fund.  *See Local 159 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 982-83 (9th Cir. 1999).  Nor is it clear that DMC, as a fiduciary, is seeking to enjoin an act or practice which violates ERISA or the terms of the Plan under § 502(a)(3).

complaint, the Trust Fund alleges that there is jurisdiction under § 502(a) and the Federal Declaratory Relief Act. *See* Compl. ¶ 1. In its briefs in opposition to the motion to dismiss and in support of its motion for summary judgment, the Trust Fund contends: "When a plaintiff's claim [here, DMC's claim for payment against the Trust Fund brought in arbitration] comes within the scope of § 502(a), ERISA provides the sole remedy and preempts any state law claims." Pl.'s Opp'n to Def.'s Mot. to Dismiss, p. 5; Pl.'s Mot. for Summ. Judg. at 9. In short, nowhere does the Trust Fund assert preemption under § 514(a).

       1.     <u>Preemption under § 502(a)</u>

Section 502(a) "provides the exclusive claims that are available under ERISA, as well as by whom and against whom such claims may be brought." *Abraham v. Norcal Waste Systems, Inc.*, 265 F.3d 811, 823 (9th Cir. 2001). A dispute is preempted by § 502(a) of ERISA "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 210 (2004). "An otherwise preempted claim may survive to the extent that it relies on a theory independent of the benefit plan," *Abraham*, 265 F.3d at 824 (citation omitted). *See Mem'l Herman Hosp. Sys. v. Great-West Life and Annuity Ins. Co.*, No. H-05-1234, 2005 U.S. Dist. LEXIS 40585, at * 14 (S.D. Tex. June 30, 2005) ("[C]omplete preemption under § 502(a) requires both standing and the lack of an independent legal duty supporting a state-law claim.").

          a.     <u>Standing</u>

The Trust Fund argues that DMC has standing under § 502(a)(1)(B) because DMC, in essence, seeks payment for benefits as an assignee of the Plan participant. The Trust Fund relies on *Misic v. Building Servs. Employee Health and Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986) which held that a third-party medical provider has standing under ERISA as an assignee when that provider had no independent contractual relationship with the Plan.

Under ERISA § 502 (a)(1), a claimant must be a plan "participant" or "beneficiary" to have standing to seek recovery of benefits due. *See* 29 U.S.C. § 1132(a)(1) (providing that "a civil action may be brought – by a participant or beneficiary"); *Tango Transp. v Healthcare Fin. Servs.*, 322 F.3d 888, 891 (5th Cir. 2003) (holding that a medical center that has been assigned benefits by a

7

patient has standing); *Misic*, 789 F.2d at 1376-77 (holding that a provider adequately asserted standing in his complaint by alleging that he stood in the shoes of his patient). A "participant" is an "employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). A "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder" (*e.g.*, a participant's spouse). 29 U.S.C. § 1002(8). An assignee of benefits due a participant has standing under § 502(a)(1)(B). *Misic*, 789 F.2d at 1379.

As the party asserting federal subject matter jurisdiction, the Trust Fund bears the burden of proving that the participant assigned his benefits to DMC, thus giving DMC standing under ERISA. *See Pascack Valley Hosp. v. Local 646A Welfare Reimbursement Plan Pascack Valley Hosp.*, 388 F.3d 393, 401 (3d Cir. 2004) (citing *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001)). Determining whether a third-party medical services provider, like DMC, is bringing a claim as an independent third party or as an assignee of a participant is "a fact-sensitive inquiry." *Cypress Fairbanks Med. Ctr, Inc. V. Pan-American Life Ins. Co.*, 110 F.3d 280, 284 (5th Cir. 1997). The party asserting federal jurisdiction must show express evidence of an explicit assignment in order for a court to find that the alleged assignee has standing. *See Pascack*, 388 F.3d at 401 (finding no assignment when "there is nothing in the record indicating that [participants] did, in fact, assign any claims to the hospital"); *Hobbs*, 276 F.3d at 1241 (stating that, "while this court has allowed healthcare providers to use derivative standing to sue under ERISA, it has only done so when the healthcare provider had obtained a written assignment from a patient"); *Rogers v. Cigna Healthcare of Tex., Inc.*, 227 F. Supp.2d 652, 656 (W.D. Tex 2001) (stating that, "for Plaintiffs to have standing to file a derivative action under . . . ERISA, they would have to provide valid proof of assignment"); *NYU Hosp. Ctr-Tisch v. Local 348 Health and Welfare Fund*, No. 04 Civ. 6937, 2005 U.S. Dist. LEXIS 256, at *8 (S.D.N.Y. Jan. 6, 2005) (finding no assignment when the Defendant "has made no showing of assignment").

1    The complaint does not allege that DMC is an assignee with standing under ERISA § 502(a).
2 The Trust Fund contends in its briefs that DMC is an assignee of the Plan participant, and is seeking
3 payments of benefits as an assignee. *See* Pl.'s Mot. at 3-4. The Trust Fund argues that under the
4 terms of the Plan it could not have paid DMC any amount of money unless DMC is an assignee;
5 because the Trust Fund partially paid DMC, DMC must be an assignee. *See id.* at 4-5. The Trust
6 Fund supports this argument with the Explanation of Benefits document, which confirms partial
7 payment to DMC, and a "Daily Claims Facsimile Report," which indicates that Blue Cross reported
8 to the Trust Fund that assignment did take place. *See* Supp. Smith Decl. ¶¶ 5-6 & Ex. B (claims
9 report), Ex. C (explanation of benefits).

10   The Court need not decide whether the Trust Fund has presented adequate evidence of
11 assignment because, even if that evidence were sufficient, DMC has explicitly and completely
12 disavowed any claim against the Trust Fund that DMC might have as an assignee of the participant.
13 In other words, DMC has chosen to sue the Trust Fund for the services provided by DMC based *only*
14 on a contractual relationship independent of the ERISA Plan. DMC is not seeking payment as a
15 "participant" or "beneficiary" pursuing a claim for benefits under § 502(a)(1)(B). *Cf. Meadows v.*
16 *Employers Health Ins.*, 47 F.3d 1006, 1008 (9th Cir. 1995) (noting that health provider "did not
17 assert any claims as the assignee or subrogee of the Friedds (former plan participants)" but that,
18 "[i]nstead, the Meadows sued only as a third-party health care provider for claims that were non-
19 derivative and independent of those which the Friedds might have had"); *Fugarino v. Hartford Life*
20 *and Acc. Ins. Co.*, 969 F.2d 178, 186 (6th Cir. 1992) (stating that, "if the plaintiff is not a
21 'participant' or beneficiary,' he may sue under and seek the broader relief provided by state tort
22 law").

23   The Court's conclusion is supported by the Ninth Circuit's recent decision in *Cedars-Sinai*
24 *Medical Center v. National League of Postmasters of the United States*, 2007 U.S. App. LEXIS
25 18996 (9th Cir. 8/10/07) where a hospital brought suit against the administrator of a federal health
26 benefit plan. The hospital and administrator had entered into a contract that governed the payment
27 of services rendered to members of the plan. The hospital sued the administrator for certain services
28 provided to a plan member. As in the case at bar, the hospital did not assert assign claims to recover

9

medical benefits under the plan. Instead, it maintained this was an action to recover on the administrator's independent contractual obligation to pay the hospital for services provided rendered. The Ninth Circuit found the state suit which had been removed to district court was not preempted because the administrative dispute mechanism provided under the Federal Employee Health Benefit Act ("FEHBA") -- an analogue to ERISA[5] -- "created a remedial mechanism solely for the claims of 'covered individuals,' [an enrollee or covered family member] not for the claims of providers." *Id.* at *8. In effect, the hospital had no standing under FEHBA.

### b. Independent of the Plan

DMC's assertion of preemption under § 502(a) fails for a second reason. DMC, in disavowing any claim for benefits by assignment, relies on a theory that is "independent of the benefit plan," *Abraham*, 265 F.3d at 824, and "non-derivative and independent of those which the [participant] may have had." *Meadows*, 47 F.3d at 1008. DMC contends that it is asserting a contractual claim directly against the Trust Fund based on the CCHA. It asserts that, although the Trust Fund did not sign the CCHA, the Trust Fund is effectively a party thereto because (1) the Prudent Buyer Plan Amendment incorporated by reference the terms of the CCHA, (2) Blue Cross was acting as the Trust Fund's agent when Blue Cross signed the CCHA,[6] or (3) the Trust Fund is equitably estopped from claiming the benefits of the CCHA (the discounts) while also avoiding the burdens (arbitration). *See* Def.'s Supp. Letter at 4, 6, 7.

Whatever the viability of the contract theory asserted by DMC, its adjudication is independent of the Trust Fund's Plan and does not rest on interpretation of the terms of the Plan. The Trust Fund does not specify any provision of the Plan requiring interpretation. Based on the Court's review of the CCHA, the best argument seems to be that Plan interpretation is required

---

[5] FEHBA is analogous to ERISA, and the courts look to analogous cases involving the application of ERISA's preemption provision in interpreting FEHBA preemption issues. *Cedars-Sinai*, at *n.2.

[6] Based on a cursory review of the agreement between Blue Cross and the Trust Fund, it is not clear to this Court that the Trust Fund was a signatory to a document that incorporated by reference the terms of the CCHA, nor has any evidence been provided that Blue Cross was acting as the Trust Fund's agent when it signed the CCHA. The Court, however, makes no findings regarding the merits of DMC's state-law contract claims. It merely observes that DMC's claim for payment is based on a theory that a contractual relationship exists independent of any assignment of any benefits due under the Plan.

10

because of ¶ 4.10 of the CCHA, which specifies that, "[w]hen an Other Payor utilizes the Managed Care Network, HOSPITAL shall follow such Other Payor's specified utilization review requirements." Def.'s Mot., Ex. A (CCHA ¶ 4.10). It may be argued that the language of ¶ 4.10 language suggests that DMC is obligated to follow the utilization review procedure required by the Trust Fund Plan. The Plan establishes such a utilization review procedure.[7]

However, the utilization review procedure and the process to appeal utilization review determinations outlined in the Plan appear to be available only to Plan participants, beneficiaries, and their assignees. This was the representation made by counsel for the Trust Fund at the hearing. That assertion is consistent with the text of the Plan. Providers such as DMC apparently have no right to invoke the utilization review procedure or process to appeal. Thus, it does not appear that ¶ 4.10 of the CCHA and its arguable incorporation of the Plan applies here.

---

[7] The Plan's utilization review procedure for Plan participants, beneficiaries, and assignees requires that, when a participant is staying in a hospital, the provider must obtain concurrent utilization review by a Professional Review Organization to determine how long of a hospital stay is "Medically Necessary." "Medically Necessary" services and supplies are those that are:

a. Appropriate and necessary for symptoms, diagnosis, or treatment of the illness or injury; and
b. Provided for the diagnosis or direct care and treatment of the illness or injury; and
c. Within standards of good medical practice within the organized medical community; and
d. Not primarily for the personal comfort or the convenience of the patient, the patient's family, any person who cares for the patient, and Physician, or other health care practitioner, or any Hospital or specialized health care facility. The fact that a Physician may provide, order, recommend, or approve a service or supply does not mean that the service or supply will be considered Medically Necessary for medical coverage provided by the Plan, and
e. The most appropriate supply or level or service that can safely be provided. For Hospital confinement, this means that acute care as a bed patient is needed due to the kind of services the patient is receiving or the severity of the patient's condition, and that safe and adequate care cannot be received as an outpatient or in a less intensified medical setting.

Compl. Ex. A (Plan Art. I, § 21). "The Fund does not provide benefits for medical services or supplies that are not Medically Necessary for the care or treatment of a bodily injury or illness." *Id.* (Plan Art. IX, § 2). If a claim is denied by the Trust Fund, the participant or an authorized representative of the participant may file an appeal with the Trust Fund. *See id.* (Plan Art. XI, §§ 2(e), 3(a-d)). For an appeal concerning a determination that services were not medically necessary, the Trust Fund consults health care professionals with experience in a relevant field. *See id.* (Plan Art. XI, § 3(b)).

Moreover, as a factual matter, no Plan interpretation is actually required in this case because the Trust Fund's utilization review procedure was delegated to Blue Cross.  *See* Smith Decl. ¶¶ 9-10. In the case at bar, Blue Cross determined whether services were medically necessary, and the Trust Fund simply adopted that determination.[8]  *See id.* ¶ 10 (explaining that "Blue Cross did not certify the last day the participant was in the hospital as medically necessary" and "[t]herefore, the Trust Fund denied coverage for services rendered on the last day of participant's stay").  Because the Trust Fund delegated the medical necessity determination to Blue Cross, no interpretation of the meaning of "Medically Necessary" under the Plan would be necessary in adjudicating DMC's claim against the Trust Fund.

The Court finds the Ninth Circuit's decision in *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1053 (9th Cir. 1999), persuasive.  *Blue Cross* involved a fee dispute between Blue Cross and health providers who participated in Prudent Buyer Plan -- a medical care plan offered by Blue Cross to members and various ERISA plans.  The dispute concerned changes in Blue Cross' fee schedules.  After Blue Cross filed petitions to compel arbitration, the providers filed suit in state court alleging breach of the provider agreements.  That action was removed and remanded.  Blue Cross' petition to compel arbitration were dismissed for lack of federal jurisdiction.  On appeal, the Ninth Circuit held that, even though the providers had assignments from Plan members for payment, "the providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of ERISA plans, and hence do not fall within § 502(a)(1)(B)." *Blue Cross*, 187 F.3d at 1050.  In contrast to *Misic*, 789 F.2d at 1374, where a dentist received an assignment of a plan member's right to reimbursement and thus had standing under § 502(a)(1)(B) to sue for benefits under an ERISA plan,

> the Providers and Blue Cross have executed provider agreements, and it is the terms of the provider agreements that Providers contend Blue Cross has breached.  Indeed, the Providers are asserting contractual breaches, and related violations of the implied duty of good faith and fair dealing, that their patient-assignors could not assert:  the patients

---

[8] DMC is required to comply with the Blue Cross utilization review and appeals procedures under the terms of the CCHA.  *See* Def.'s Mot., Ex. A (CCHA ¶¶ 7.1-7.5).

>simply are not parties to the provider agreements between the Providers and Blue Cross. The dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the Providers, but the *amount*, or level, of payment, which depends on the terms of the provider agreements.

*Blue Cross*, 187 F.3d at 1051 (emphasis in original). The Court further concluded:

>[T]he Providers' claims arise from Blue Cross' alleged breach of the provider agreements' provisions regarding fee schedules, and the procedure for setting them, not what charges are "covered" under the Prudent Buyer Plan. The Providers' claims, therefore, do not rest upon this term of the Prudent Buyer Plan. Where the meaning of a term in the Plan is not subject to dispute, the bare fact that the Plan may be consulted in the course of litigation a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision.

*Id.*

As in Blue Cross, DMC's claim is based on alleged contractual obligations grounded on the provider agreements (the CCHA), claims that Plan participants could not assert. DMC's claim do not rest on the terms of the Plan.

To be sure, *Blue Cross* may be distinguished on a number of grounds. First, that case involved a dispute between Blue Cross and the providers whereas the case at bar involves a dispute between the provider and the Trust Fund. Thus, there is a closer nexus in this case to an ERISA-governed entity. Nonetheless, given DMC's disavowal of any claim of assignment of benefits under the Trust Fund Plan and its assertion of contract rights under the CCHA, DMC's claims are for "contract breaches . . . that their patient-assignors[9] could not assert." *Id.* at 1045.

Second, it may be argued that the dispute in *Blue Cross* was clearly based on the provider agreements and the fee structure contained therein, and was thus clearly divorced from and independent of the ERISA plan. In the instant case, DMC's suit is predicated on the CCHA which arguably incorporates the Trust Fund's utilization review requirements of its Plan. But, as previously noted, at least on the facts of this case, no interpretation of the Plan is required. As in *Blue Cross*, "[w]here the meaning of a term in the Plan is not subject to dispute, the bare fact that the Plan may be consulted in the course of litigating a state law claim" does not result in preemption.

---

[9] Again, the Court does not conclude there was such an assignment here.

13

*Id.* at 1051; *see also Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (noting that adjudication of claim does not require interpreting the plan); *Toumajian v. Frailey*, 135 F.3d 648, 655 n.4 (9th Cir. 1998) (providing that preemption requires that claim "relate to" an ERISA plan); *cf. The Meadows v. Employers Health Ins.*, 47 F.3d 1006, (9th Cir. 1995) (concluding that provider's claim against health insurer of plan participant for misrepresentation, estoppel, and breach of contract was independent of ERISA claims the participants might have had and thus not preempted).

Significantly, the Third Circuit has applied *Blue Cross* to facts materially indistinguishable from the instant case. In *Pascack Valley Hospital*, 388 F.3d at 393, the court found a hospital's breach of contract claims against a union and its ERISA plan not preempted. In that case, MagNet (like Blue Cross here) organized a network of hospitals that agreed to accept discounted payments for medical services provided to plan participants. Similar to Blue Cross, MagNet entered into a "Subscriber Agreement" with the defendant plan and a "Network Hospital Agreement" with the plaintiff hospital. The hospital claimed that the plan failed to pay the hospital for services rendered to two plan participants according to the terms of the Subscriber Agreement. The hospital asserted that it was a third-party beneficiary to the Subscriber Agreement between MagNet and the plan. Like DMC in the case at bar, the hospital did not assert it had an assignment of benefits -- and the court found no assignment was proved. *Id.* at 401. Accordingly, the court held the hospital did not have standing to sue under § 502(a) since it was neither a participant or beneficiary. *Id.* at 400. The court further concluded that the hospital's breach of contract claims were "predicated on a legal duty that is independent of ERISA." *Id.* at 402.

> The Hospitals' claims, to be sure, are derived from an ERISA plan, and exist "only because" of that plan. 159 L. Ed. 2d 312, slip op. at 11. The crux of the parties' dispute is the meaning of Section 2.1 of the Subscriber Agreement, which governs payment for "Covered Services furnished to Eligible Persons." Were coverage and eligibility disputed in this case, interpretation of the Plan might form an "essential part" of the Hospital's claims. *Id.*
>
> Coverage and eligibility, however, are not in dispute. Instead, the resolution of this lawsuit requires interpretation of the Subscriber Agreement, not the Plan. The Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself.

14

*Id.* at 403. The court found the Ninth Circuit's decision in *Blue Cross* particularly instructive as the claims in both cases were independent of the ERISA plans and the participants and beneficiaries of the plans were not parties to the agreement (Subscriber Agreement in *Pascack Valley Hospital*) on which the providers sued.[10] Finally, the court acknowledged the "apparent convergence between the Hospital's breach of contract claim and a claim for benefits under § 502(a)." *Id.* at 404. "Nevertheless, the absence of an assignment is dispositive of the complete pre-emption question . . . [I]t is clear that the Hospital is asserting a claim that could not be asserted under the civil enforcement provision of ERISA [Section 502(a)]." *Id.* The same is true in the instant case.

Other courts addressing similar issues have reached similar conclusions. *See Fresno Community Hospital and Medical Center v. UFCW Employer Benefit Plan of Northern California Group Administration LLC*, No. CV F 06-1244 AWI LJO, 2006 U.S. Dist. LEXIS 94700 (E.D. Cal. Dec. 19, 2006); *Ocadian Care Centers, Inc. v. Electrical Workers Health &Welfare Plan for Contra Costa County*, No. C 01-00790 MEJ, 2001 U.S. Dist. LEXIS 14241 (N.D. Cal. Sept. 6, 2001). Again, the Ninth Circuit's recent decision in *Cedars-Sinai* supports the Court's conclusion. The court refused to find preemption not only because the dispute resolution system excluded claims under provider contracts, but also because the hospital made it clear it was not asserting any derivative claim for benefits based on an assignment but "only third-party claims for damages." 2007 U.S. App. LEXIS 18996 at *20. Relying on analogous ERISA preemption decisions finding similar claims did not "relate to" an ERISA plan, the court found the claim was not preempted. *Id.* at *13-21.

These outcomes against a finding of preemption are consistent with the trend limiting the scope of ERISA preemption in these and similar cases. As Judge Illston observed in *Burbank Podiatry Associates Group, APC v. Blue Cross of California*, Nos. C 98-2326 SI, C 98-3446 SI, C

---

[10] The Court further noted the disputes in both cases was not over the right to payment dependent on the patients' assignments to the hospital, but the amount of payment which depends on the terms of the Subscriber Agreement. In the instant case, the parties spar over the characterization of the dispute -- whether it concerns the right to payment (whether the last day of hospitalization was a covered benefit) or the level of payment. That characterization is not dispositive. The critical question is whether resolution of the dispute turns on the terms of an ERISA plan or an independent contract.

15

98-3447 SI, 1999 U.S. Dist. LEXIS 1397 (N.D. Cal. Feb. 3, 1999), both Supreme Court and Ninth Circuit precedence has limited the scope of ERISA preemption. Judge Illston noted:

> The key to distinguishing between what ERISA preempts and what it does not lies . . . in recognizing that the statute comprehensively regulates certain *relationships*: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee . . ., and between plan and trustee. . . . *Complete preemption*, and thus federal jurisdiction, requires that plaintiff bringing the claim must participate in one of these relationships by being a plan participant, beneficiary, or fiduciary entitled to seek recovery under 29 U.S.C. § 1132(a).

*Id.* at *23 (emphasis in original). In *Burbank Podiatry Associates*, the plaintiff providers asserted a breach of contract between Blue Cross and its providers.

> Here, plaintiffs seek to recover under state contract law for breach in the contractual relationship between Blue Cross and its participating physicians. This is not the relationship between plan and plan member, plan and employer, employer and employee, or plan and trustee. . . . Plaintiffs are not plan participants, beneficiaries, or fiduciaries within the scope of 29 U.S. C. § 1132(a). . . . The Burbank Podiatry plaintiffs raise a traditional state law claim that does not implicate the enforcement provisions of § 1132(a), so there is no complete preemption here.

*Id.*

Tellingly, the Trust Fund has not cited any case, other than those involving an assignment of plan benefits (such as *Misic*), in which a third-party provider's claim against either an ERISA plan or the plan's insurer, has been found preempted.

### III.   CONCLUSION

In the absence of a claim for assigned benefits due under the Plan, DMC's contractual claim against the Trust Fund is not preempted under § 502(a). DMC does not have standing to sue under 502(a)(1)(B) as a participant or beneficiary of the Plan. Moreover, DMC has disavowed any claim of assignment of Plan benefits, asserting instead claims independent of the Plan. Absent preemption under § 502(a), there is no federal jurisdiction over the instant case.

///

///

///

///

For the foregoing reasons, the Court grants Defendant's motion to dismiss for lack of subject matter jurisdiction. Because the Court lacks subject matter jurisdiction, Plaintiff's motion for summary judgment is denied. The case is dismissed.

The Clerk of the Court is directed to enter judgment and close the file in this case.

This order disposes of Docket Nos. 5 and 12.

IT IS SO ORDERED.

Dated: August 17, 2007

EDWARD M. CHEN
United States Magistrate Judge

17